IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**VICKIE WILSON,**

      Plaintiff,

vs.                                                             Civ. No. 97-1007 MV/DJS

**KENNETH S. APFEL,**
**Commissioner of Social Security,**[1]

      Defendant.

**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[2]

1.   Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits.  Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing.  The Court will review the Commissioner's

---

   [1]   Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted therefore, for Acting Commissioner John J. Callahan as the Defendant in this suit.

   [2]   Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.   Plaintiff applied for Supplemental Security Income (SSI) benefits on September 22, 1994 alleging a disability which commenced October 1, 1992. Tr. 14, 61 and 71. The Administrative Law Judge (ALJ) found that Plaintiff was not disabled. Tr. 16-17. The Appeals Council denied Plaintiff's request for review. Tr. 4-5. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.   Plaintiff alleges a disability due to diabetes, bulging discs, nerve root damage, a partial tear in the left rotator cuff, and depression. Tr. 14, 61 and 71. Plaintiff is a 46 year old woman with a high school education who has previously worked as a security guard and as a clerk-cashier. Tr. 75.

**Issues**

4.  Plaintiff alleges the ALJ made three errors. Specifically Plaintiff claims that: (1) the past relevant work analysis is not supported by substantial evidence and is contrary to law; (2) the ALJ's reliance on Plaintiff's failure to seek medical treatment is contrary to law; and (3) the ALJ erred in not

2

considering Plaintiff's nonexertional impairments.

**The Standard of Review**

5.  The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Id. It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld. However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied. Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.  The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work. Once that showing is made, the burden shifts to the Commissioner to show: (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy. Hall v.

Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.  To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

8.   Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.   These grids reflect the existence of jobs in the

national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

    9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments

does not automatically preclude reliance on the grids.  Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.  Plaintiff failed to carry her burden in establishing that she has a disabling impairment.  To qualify for benefits Plaintiff must demonstrate, in accordance with the relevant portion of Section 223(d) of the Act, 42 U.S.C. §423(d), that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for at least 12 months.  42 U.S.C. §416(1)(10).  The Act defines a physical or mental impairment as one "that results from anatomical, physiological or psychological abnormalities which are demonstrated by medically acceptable clinical or laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).  The Commissioners' regulations require claimants to support their allegations through medically acceptable clinical and diagnostic techniques.  20 C.F.R. §404.1513.

11. Plaintiff argues that the ALJ erred in relying on the reports of Dr. Jones, Plaintiff's treating physician, and two other examining physicians, Dr. Schultz and Dr. Davis because these reports do not support the ALJ's finding that Plaintiff can perform the functions of light work on a consistent daily basis.  Contrary

to Plaintiff's assertions these reports provide substantial evidence in support of the ALJ's decision. The physicians' opinions are consistent with the evidence in the record. Further, the reports are consistent among themselves. //

12. The ALJ must give substantial weight to a treating physician's opinion unless good cause is shown to disregard it. Sorenson v. Bowen, 888 F.2d 706, 711 (10th Cir. 1989). Early in his treatment Dr. Jones said Plaintiff could do only sedentary work. However later after a functional capacity evaluation Dr. Jones found that Plaintiff could lift 10 lbs. frequently and 35 lbs occasionally. Tr. 145. This limitation is within the definition of light work. 20 C.F.R. §404.1567. Dr. Jones did not find any limitation on standing or walking for approximately 6 hours in an 8 hour work day. Dr. Jones did find that Plaintiff did have a limitation with lifting above the shoulder with the left arm. Tr. 136. The ALJ specifically noted this and found that Plaintiff could perform light work with this limitation.

13. Dr. Schultz concluded that Plaintiff had only a 10-15% impairment to the body as a whole and was able to do light and/or sedentary type of work. Tr. 180. Plaintiff's argument that Dr. Schultz might not have used these terms as defined in the Social Security Regulations is not determinative as to whether the ALJ should have relied on his report in making his decision. The report of Dr. Schultz was consistent with Plaintiff's treating physician. Dr. Schultz report is an acceptable source for medical opinions.

20 C.F.R.§§404.1513. There is no conflict in the report of Dr. Schultz and Plaintiff's treating physician. There is simply no reason not to give some weight to his report and opinion. Further, even if the ALJ disregarded the report of Dr. Schultz, the outcome and the decision of the ALJ would not have been different. It is clear from the opinion that Dr. Schultz report was not the determining factor in his opinion but merely one factor he considered. Tr. 15.

    14. Dr. Davis, another examining physician, found that Plaintiff's ability to stand and walk "do not appear to be substantially impaired." Tr. 210. Plaintiff argues that the ALJ's reliance is misplaced because she has knee problems. Dr. Davis noted Plaintiff's discomfort but found normal movement of the knee with no obvious swelling, edema or erythema of the knees. Tr. 210. An x-ray on June 28, 1990 showed some narrowing of the joint space and some minimal spurring but no sign of an acute problem. Tr. 165. Plaintiff did not complain of knee problems for some time after this x-ray. Plaintiff's knee was not mentioned as a limitation in any of the functional capacity evaluations. Tr. 146 and 148. On August 31, 1993 Plaintiff did complain of knee pain. On examination Dr. Jones found no tenderness, swelling or signs of acute inflammation above the knee. She was able to get up on her left heel and left toes. She walked with no difficulty. She had a full range of motion of the knee without difficulty. There was no crepitus and no instability. Tr. 141. The evidence clearly

supports Dr. Davis conclusion that Plaintiff did not have a significantly limiting knee impairment that would prevent sedentary and light work.

15.  Further, it is clear from the ALJ's decision that he did not make his finding of Plaintiff's RFC based upon his disbelief of Plaintiff's complaints of pain.  The ALJ considered the medical evidence and the record as a whole.  Tr.  15-16.

16.  Finally, to determine that a claimant is not disabled at step four the ALJ must find that the claimant has the residual functional capacity to perform their past work either as they performed it or as it is generally performed in the national economy.  See Andrade v. Secretary of Health and Human Services, 985 F.2d 1045, 1051 (10th Cir. 1993).  The ALJ may rely on the Dictionary of Occupational Titles (DOT) job description for the Plaintiff's job category as "presumptively applicable to a claimant's prior work."  Id.  In this case the ALJ did not state that he relied on the DOT to determine that Plaintiff's past work is classified in the light category.  Plaintiff does not argue that this finding is inaccurate.  The ALJ's failure to state his source does not require a remand.  The evidence shows that the Plaintiff can perform light work and that Plaintiff's past work is light work.  Thus there is no error.

17.  The ALJ noted that Plaintiff complained she could not afford treatment for her diabetes.  However, the record clearly shows she was taking her insulin. Tr. 143, 144.  There is no

objective evidence that Plaintiff suffered any complications from her diabetes. Further, the record is replete with physician's visits. The record does not support that Plaintiff did not have medical care. The ALJ noted Plaintiff's complaint. It is clear from his decision he did not use this issue to deny benefits to the Plaintiff as argued by the Plaintiff.

18. The record supports the ALJ's finding that Plaintiff's alleged mental impairment is not severe. There is simply no objective evidence that this alleged impairment is disabling. Plaintiff was examined by Dr. Balcazar, a psychiatrist. He found that Plaintiff's attention span and her capacity to concentrate were preserved. She communicated affect. Her mood was light on the depressed side. Her emotional reaction was appropriate to the circumstances and content of thought. Tr. 221. Dr. Balcazar diagnosed her with a dysthymic disorder which is a mild form of depression. He also diagnosed her with atypical personality disorder. He found he had adequate judgment to plan a work sequence. He also found she could use tools and material for simple jobs and perform one and two step repetitive tasks at a competitive rate. He found that her "main handicap seems to be of a physical nature". Tr. 222. Plaintiff told Dr. Balcazar she could not work with others. Her statement is not supported by the record. She worked for many years. Tr. 79. She said she was fired for not getting along with her boss. However, the record shows and the ALJ specifically noted that she was fired after she

committed a serious security error.  Tr. 15, 42.

19. Plaintiff also argues that the ALJ erred in not considering Plaintiff's alleged nonexertional impairments of obesity and incontinence.  There is no evidence in the record that either of these alleged impairments interfered with plaintiff's ability to perform work activity.  Plaintiff has again failed to meet her burden.

20. To conclude, Plaintiff's subjective complaints by themselves are insufficient to establish disability.  See Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).  Disability requires more than the mere inability to work without pain, stress or depression.  Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988; Gay v. Sullivan, 986 F.2d 1336 (10th Cir. 1993).  The record as a whole supports the Commissioner's decision.

### Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**

11

12